J-S23002-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| RONALD FLAMER, | : | |
| Appellant | : | No. 2044 EDA 2013 |

Appeal from the Judgment of Sentence April 5, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0004863-2012

BEFORE:  DONOHUE, SHOGAN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED MAY 05, 2015**

Ronald Flamer ("Flamer") appeals from the judgment of sentence entered following his convictions of robbery, conspiracy, and recklessly endangering another person ("REAP").[1]  Following our review, we affirm in part and vacate in part.

The trial court aptly summarized the facts underlying Flamer's convictions as follows:

> The incident giving rise to the charges in this case occurred on February 12, 2012, at a delicatessen located on 816 North 12th Street in the city of Philadelphia ("12th Street Deli") around 8:45 P.M. The complainant … was walking down 12th Street toward Parrish Street when he noticed a gold Nissan Maxima that began to suspiciously slow down. There were three males in the vehicle whom were staring at him (Id. at 41:20-25). Upon sight of this behavior, White began to walk back home.  However, the car

---

[1]  18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 2705.

*Retired Senior Judge assigned to the Superior Court.

pulled up next to him. He then walked inside the 12th Street Deli to try to avoid the situation. Nevertheless, [Flamer] and [his] co-Defendant, Lamar Person, got out of the car and immediately followed him into the deli. … They then both surrounded him, one on each side, and [Flamer] told the complainant to empty his pockets. [Flamer] proceeded to go through complainant's pockets with both hands and ultimately took a five dollar bill, a pack of Newport 100 cigarettes, and a cell phone. [Flamer] angrily raised his voice and instructed Person to "pull out the ratchet" when he realized that the complainant had nothing more than those few items. The complainant testified that he understood that phrase to mean a "gun" in Philadelphia. When the complainant looked down, he saw Person holding what appeared to be the barrel of a black gun. The black object was pointed towards the complainant from Person's waist. [Flamer] and co-Defendant left the 12th Street Deli when they finally realized that they took all the complainant had on him. The complainant went directly home, and his mother called the police.

When the police arrived, the complainant spoke with Officer Joseph Gillespie about what had happened. Officer Gillespie put out a police flash with descriptions of the suspects. At or about the same time, [Flamer] and his co[-]conspirators [sic] were stopped for a traffic violation in a gold Nissan Maxima by Officer Robert Wuuller at Broad and Dauphin Street because there was no passenger side mirror on the vehicle. The description of the vehicle and the suspects matched [Flamer], his co[-]conspirator, and the gold Nissan Maxima. The complainant then identified both [Flamer] and Person as the perpetrators of the robbery. Upon search of [the vehicle], pursuant to a search warrant for the vehicle, the police recovered a pack of Newport 100s and a black cell phone that was later identified as belonging to the complainant.

Trial Court Opinion, 8/13/14, at 2-3.

A jury found Flamer guilty of the offenses listed above. The trial court denied Flamer's post-sentence motion and subsequently sentenced him to an aggregate term of fifteen to thirty years of incarceration.[2] This timely appeal followed.

Flamer presents three issues for our review, the first two of which challenge the sufficiency of the evidence supporting his robbery and REAP convictions. When reviewing sufficiency of the evidence claims, "we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (quoting *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011)). When performing this review, "we may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Id.*

Flamer first argues that the evidence was insufficient to support his conviction of robbery as a first-degree felony. Robbery is defined, in relevant part, as follows:

> **(a) Offense defined.**--

---

[2] Specifically, the trial court sentenced Flamer to consecutive terms of ten to twenty years on the robbery conviction and five to ten years on the conspiracy conviction, and no further penalty on the REAP conviction. N.T., 4/5/13, at 39-40.

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

(v) physically takes or removes property from the person of another by force however slight; or

(vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

***

(b) Grading.--

(1) Except as provided under paragraph (2), robbery under subsection (a)(1)(iv) and (vi) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

18 Pa.C.S.A. § 3701(a)(1),(b).

Flamer was convicted under subsection (a)(1)(ii), which requires that in the course of committing the theft, the actor "threatens another with or

intentionally puts him in fear of immediate serious bodily injury[.]" 18 Pa.C.S.A. § 3701(a)(1)(ii).[3] Presently, Flamer argues that the evidence was insufficient to support a finding that Flamer and/or his co-defendant threatened, or intentionally placed the victim in fear of, immediate bodily injury. Flamer's Brief at 16-20. He argues essentially that because the victim could not state unequivocally that what the co-defendant possessed was a gun, "the proof offered is insufficient to establish beyond a reasonable doubt the commission of § 3701(a)(1)(ii)." *Id.* at 18. We disagree.

The evidence, viewed in the light most favorable to the Commonwealth, establishes that Flamer and his co-defendant surrounded the victim while he was sitting down. N.T., 1/16/13, at 50. They stood so close to the victim that he could not stand up or move. *Id.* Flamer demanded that the victim empty his pockets. *Id.* at 51. The victim responded that he did not have anything and held out the five dollars that he had on his person. *Id.* at 52. Flamer then went through the pockets on the victim's coat and pants and discovered only a cellular phone and a partial pack of Newport 100 cigarettes. *Id.* In an aggravated tone of voice, Flamer then told his co-defendant to "pull out the ratchet." *Id.* at 53. The victim understood "ratchet" to mean gun. *Id.* at 54. At that time, the co-

---

[3] "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

defendant pulled out something that he had concealed on his hip, but kept it close against his waist. *Id.* at 53, 55. The victim glanced at the object and saw what looked like the barrel of a gun.[4] *Id.* at 56. With the object exposed, Flamer asked the victim if he had anything else. The victim responded in the negative, and Flamer went through his pockets once more before leaving the store with his co-defendant, as well as with the victim's phone, cigarettes and money. *Id.* at 57. The victim testified that he was nervous during the encounter because "he wasn't sure what was going to happen." *Id.* at 68.

This evidence establishes that Flamer and his co-defendant physically restricted the victim and brandished a gun while demanding that the victim give them his possessions. We conclude that in this case, the displaying of a gun while issuing demands is sufficient to establish that Flamer threatened or intentionally placed the victim in fear of immediate serious bodily injury. *See* 18 Pa.C.S.A. § 3701(a)(1)(ii). In arguing to the contrary, Flamer places much emphasis on the fact that no gun was recovered during the search of Flamer or the vehicle. Flamer's Brief at 19-20. This does not negate the evidence as set forth above, and therefore it is inconsequential to our analysis. The jury was free to give as much weight as it believed

---

[4] The victim testified that he did not keep looking at the object, opting instead to "look in their eyes to kind of go with their body language to see what was going to happen next." N.T., 1/16/13, at 56.

appropriate to the fact that no gun was recovered, and apparently, it found it inconsequential, as well.

Next, Flamer argues that the evidence was insufficient to support his REAP conviction. To convict a defendant of REAP, the Commonwealth must establish that the defendant "recklessly engage[d] in conduct which place[d] or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. Flamer argues that "to sustain a conviction [for REAP], the Commonwealth must prove that [Flamer] had an actual present ability to inflict harm and not merely the apparent ability to do so." Flamer's Brief at 21. He contends that because the victim "never identified a gun definitively" and "no weapon was ever recovered[,]" there was insufficient evidence of "an actual, rather than theoretical condition of danger necessary to prove [REAP]." *Id.* at 24. Flamer is correct, in that to support a REAP conviction, conduct in question must create an actual, not merely theoretical or perceived, danger. **Commonwealth v. Cancilla**, 649 A.2d 991, 994 (Pa. Super. 1994) ("Danger, and not merely the apprehension of danger, must be created. Therefore … ("[18 Pa.C.S.A.] § 2705 retains the common law assault requirement of actual present ability to inflict harm.") (quoting **Commonwealth v. Trowbridge**, 395 A.2d 1337, 1340 (Pa. Super. 1978)). However, his argument ignores the fact that the jury was free to credit the victim's testimony and conclude that his co-conspirator possessed a gun and threatened him with it; accordingly, it fails.

Flamer also contends that because of this requirement of "actual" harm, "the pointing of an unloaded weapon, without more, does not constitute [REAP]." *Id.* at 22 (quoting **Commonwealth v. Gouse**, 429 A.2d 1129, 1131 (Pa. Super. 1981)). The Commonwealth counters this argument by pointing out that there was no evidence that the gun was unloaded, and contends that "[Flamer's] sufficiency challenge does not allow him to draw a contrary conclusion." Commonwealth's Brief at 11. Although the Commonwealth is correct that there is no evidence of record that the gun was loaded or not loaded, under the facts of this case, to establish the existence of an actual danger of death or serious bodily injury, the Commonwealth had to establish that the gun was loaded to secure a conviction of REAP. **See Commonwealth v. Smith**, 437 A.2d 757, 759 (Pa. Super. 1981) (holding that REAP conviction based on threat of shooting requires proof that the firearm was loaded).[5] Because there is no such evidence, the conviction cannot stand.

Finally, Flamer argues that the trial court erred in denying his request to charge the jury on robbery graded as a second-degree felony. Flamer's

---

[5] As acknowledged by Flamer, it is possible to be convicted of REAP for brandishing an unloaded weapon when other circumstances are present that create a real possibility for danger. For example, this Court has held that "such a danger could exist where the actor points an unloaded gun … at a person driving a passenger-filled car at fifty miles per hour on a public highway, since the requisite danger comes from the loss of vehicular control in such a panic situation." **Commonwealth v. Trowbridge**, 395 A.2d 1337, 1341 n.14 (Pa. Super. 1978). There is no evidence of any such additional circumstances in this case.

Brief at 24. The record reveals that Flamer did not object to the trial court's failure to include this point at the time it charged the jury. N.T., 1/17/13, at 184. Accordingly, it has been waived. **See Commonwealth v. Sanchez**, 82 A.3d 943, 978 (Pa. 2013) (holding that even where trial court denies request for specific charge at charging conference, party must make a specific objection to its omission when charge is given to preserve the issue for appeal).

Even if Flamer had not waived this issue, it would not prevail.[6] Flamer argues that he was entitled to a charge on robbery as a second-degree felony because it is a "lesser included offense [of first-degree felony robbery] for which the record contained evidentiary support." Flamer's Brief at 28.[7] This argument is premised on Flamer's assertion that because the victim did not positively identify the object in the co-defendant's hand as a gun, the jury could reasonably conclude that they did not possess a gun and therefore did not threaten or intend to put the victim in fear of serious bodily harm, as is required for a conviction of robbery as a first degree felony. **Id.** We rejected precisely the same argument in **Commonwealth v. Thomas**,

---

[6] "In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law." **Commonwealth v. Clouser**, 998 A.2d 656, 658 (Pa. super. 2010).

[7] We note that the relevant distinction here is that first-degree felony robbery requires a finding that the actor threaten or instill the fear of serious bodily injury, while second-degree felony robbery requires only the intent to cause or instill fear of bodily injury. **See** 18 Pa.C.S.A. § 3701(a)(1)(ii), (iv).

546 A.2d 116 (Pa. Super. 1988). In that case, the defendant robbed a fast food restaurant. In the course of doing so, he held a pointed object under his shirt. As the defendant was collecting money from the registers, it was revealed that the object under his shirt was a door lock. He was convicted of robbery graded as a first-degree felony. In a PCRA petition, the defendant argued that his trial counsel was ineffective for failing to request a charge to the jury on robbery as a second-degree felony because it is a lesser-included offense. After considering the definitions of these crimes, we agreed with the defendant that second-degree robbery is a lesser-included offense of first-degree robbery, but we rejected his claim that this alone entitled him to a charge on the offense:

> However, [the defendant] is not automatically entitled to have the jury instructed on second degree robbery simply because that charge constitutes a lesser included offense of the first degree robbery charge. A defendant is entitled to such an instruction only where the evidence in the record would permit the jury to find, rationally, the defendant guilty of the lesser included offense but not the greater offense. **Commonwealth v. Wood**, 475 A.2d 834 ([Pa. Super.] 1984); **Commonwealth v. Sirianni**, 428 A.2d [629,] 633 [Pa. Super. 1981].
>
> [The defendant] asserts that he was entitled to such an instruction because the evidence supported a finding that appellant threatened the McDonald's employees with "immediate bodily injury" but not with "immediate serious bodily injury." According to [the defendant], since [he] carried only a lock, which cannot cause serious bodily injury, the victims were never placed in fear of serious bodily injury. … .

[The defendant's] focus on the true nature of the hidden object and on the state of mind of the victims is misplaced. Rather, the proper focus under the statute in determining the type of bodily harm threatened is on the defendant's intent and actions. ***Commonwealth v. Morton***, 512 A.2d 1273 ([Pa. Super.] 1986); ***Commonwealth v. Mays***, 375 A.2d 116 ([Pa. Super.] 1977). In simulating the possession of a gun, [the defendant] was clearly aiming to instill in his victims the highest degree of fear. Faced with a deadly weapon, a victim fears, not just that he or she may be injured during the robbery, but that his or her very life is in danger. [The defendant] did not simply intend that the victims' fear of some bodily injury would prevent resistance; rather, he relied on the threat of a deadly weapon to insure compliance.

[The defendant's] crime is not made less serious by the fact that he did not possess a gun, but was only simulating one. ***Commonwealth v. Hurd***, [] 407 A.2d 418, 420 ([Pa. Super.] 1979) (defendant placing hand in pocket and pointing at victim shows that defendant intended to put victim in fear of serious bodily harm). Neither is the harm intended reduced to mere bodily harm simply because the victims realized before [the defendant] escaped (but after [he] began taking the money), that [he] did not possess a gun. The proper question is whether the threat intended or posed by [the defendant] was calculated to inflict fear of serious bodily injury. ***Commonwealth v. Mays***, [] 375 A.2d at 118. The threat posed by the appearance of a gun is calculated to inflict fear of deadly, not just mere bodily, injury. This threat enabled [the defendant] to proceed with the theft. … Moreover, the statute instructs that in determining the grade of the felony we focus on the intent or act of the defendant and not the subjective state of mind of the victim. [The defendant] would not have been exonerated of the first degree felony even if his victims refused to take his threat seriously. ***Hurd***, 407 A.2d at 420; ***Mays***, 375 A.2d at 118.

- 11 -

The statute itself, by dividing the degrees of robbery into gradations of possible violence, demands that the jury make a decision as to the degree of violence that the defendant intended or used in the commission of the crime. In distinguishing between bodily injury and serious bodily injury, the legislature recognized that the amount of force used or threatened on a person during a robbery deserved separate treatment and penalty, with the punishment proportionate to the amount of violence threatened or used. ***Commonwealth v. Brown***, [] 484 A.2d 738, 741 ([Pa.] 1984). It would be both irrational and contrary to the aims of the statute for the jury to be permitted to find [the defendant], who calculated that his victims would be in mortal fear of a deadly weapon, guilty only of the lesser offense of threatening mere bodily injury, but not guilty of threatening serious bodily injury. [The defendant] was therefore not entitled to have the jury instructed on the charge of second degree robbery. ***See*** [] ***Sirianni***, [] 428 A.2d at 633 (where firearm involved, it would not have been reasonable for the jury to infer the intent to cause mere bodily injury from the fact that no serious bodily injury was caused; defendant not entitled to jury instruction on lesser included offense of simple assault). Instructions should invite the jury to arrive at a rational, not an irrational, conclusion.

***Thomas***, 546 A.2d at 118-19.

Similarly to the situation in ***Thomas***, Flamer's argument for the second-degree robbery instruction was premised on his assertion that the evidence would allow a finding that he did not actually possess a gun. However, as recounted above, whether he actually possessed a gun is not the salient inquiry; we focus, instead, on whether the actor intended to instill fear of serious bodily injury. Even if Flamer and his co-defendant did not

possess a gun, it is undisputed that they simulated possession of a gun. Thus, as in **Thomas**, we conclude that the "threat intended or posed by [Flamer] was calculated to inflict fear of serious bodily injury," and the jury could not have rationally concluded otherwise. Accordingly, we find no error in the trial court's refusal to give the requested charge.

In sum, we found merit to only one of Flamer's claims. Having concluded that the evidence was insufficient to support Flamer's REAP conviction, we vacate it. Because no penalty was imposed on this conviction, our action has not disturbed the trial court's sentencing scheme and there is no need to remand for resentencing. **Cf. Commonwealth v. Barton-Martin**, 5 A.3d 363, 370 (Pa. Super. 2010) (providing that where vacating a sentence disrupts a trial court's overall sentencing scheme, this Court will remand to the trial court for resentencing).

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2015